UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CRIMINAL NO. 04-10135-GAO

UNITED STATES OF AMERICA,
Plaintiff

v.

JILL E. DOUCETTE,
Defendant.

MEMORANDUM AND ORDER
May 31, 2005

O'TOOLE, D.J.

The defendant has moved to suppress statements made by her to a special agent of the Drug Enforcement Administration (DEA) on the ground that she had not been advised by the agent of her so-called "Miranda rights." An evidentiary hearing was conducted in which the agent in question and another agent testified. Having considered the evidence adduced, I find as follows:

After an investigation that included surveillance and controlled purchases of illegal drugs, Doucette and her boyfriend, co-defendant Thomas Scola, were arrested on April 7, 2004, in Wakefield, Massachusetts. They were brought to a building that was serving as a temporary location for the Wakefield police. Doucette was held in a room that was essentially a holding or waiting area, and Scola was held in an adjoining room. Special Agent Clem Fisher, who was at the location but who had not participated in the arrests, was asked to watch over Doucette while she was in custody.

Doucette was somewhat agitated. I do not find that she was "high" or under the influence of drugs to the extent that her understanding was impaired. She was expressing concern about what might happen to her child as a consequence of her arrest. She also expressed anger at Scola. Agent Fisher asked her if she wanted to give a statement, and she said she did. At this point, Fisher testified, he took a standard DEA Miranda card from his credentials wallet and read the usual warnings to Doucette. He also testified that she indicated that she understood and was willing to answer questions.[1] Thereafter, she provided information both in answer to particular questions and in a rapid stream of unprompted discourse, which she now seeks to suppress.

Although Fisher testified that he called in another agent, Dan Genese, who was present at the makeshift police station but in another area, to witness his reading of the warnings, and Genese testified, consistently with Fisher, that he was called in to witness Fisher's reading of the warnings, there is no objective evidence corroborating their testimony. On the contrary, the objective evidence, while not flatly inconsistent with the agents' testimony, does raise questions about it.

Both agents wrote reports on form DEA-6 that set forth information about the interrogations of Scola and Doucette. In his report, Agent Genese noted simply that Doucette had been interviewed by Agent Fisher. He made no notation about his having witnessed Agent Fisher give the Miranda warnings to Doucette. In the very next paragraph of his report, however, Genese did explicitly report that he had given Scola the Miranda warnings before questioning him and that Special Agent DiTullio had witnessed that event. In other words, in one instance he specifically recorded the giving and

---

[1] Fisher testified that "she indicated yes, she understood these rights" and "basically, she said yes." These summary assertions do not help one to decide where to locate her expression of understanding on a hypothetical spectrum extending from shrugging acquiescence at one end to unmistakable articulation on the other.

2

witnessing of the Miranda warnings and in the other instance he did not. Agent Fisher's report, which is five pages long and sets forth the information supplied by Doucette in detail, also contains no mention of the giving or witnessing of Miranda warnings. Fisher acknowledged that an agent would ordinarily include in his report the fact that the warnings had been given, so as to make a contemporaneous record of that significant occurrence. The omission to do so might signal a mere clerical error or it might support an inference that the event had not occurred, because if it had, it would have been recorded.

Nor is there any written acknowledgment signed by Doucette attesting that she had been given the Miranda warnings and waived the presence of an attorney, as sometimes happens. Agent Fisher testified that he took notes on paper as Doucette talked, so it seems apparent that it was possible for him to have Doucette indicate in writing an acknowledgment and waiver of her rights. Both agents testified, however, that it was not DEA policy to have interrogated subjects give such a written acknowledgment.

In sum, there is no objective, contemporaneous evidence that the warnings were given and waived. The only evidence that supports a factual finding that the warnings were given is the agents' oral testimony, well after the events in question, that they were. The government's suggested reconciliation of the apparent inconsistency is that Agent Fisher gave the rights, but simply erred in failing to record the fact in his report. The defendant, in contrast, suggests in effect that the error was in the not giving of the warnings in the first place, and that explains why the report omits to say that they were given.

The government bears the burden of persuasion. On the evidence, I cannot say that I am persuaded that the error lay in failing to record, rather than in failing to read the rights in the first

place. Thus unpersuaded, I do not find that the Miranda rights were read to Doucette before she gave her statements, incontestably made in the course of custodial interrogation. I therefore conclude that the evidence is subject to the exclusionary rule. See Dickerson v. United States, 530 U.S. 428 (2000).

The motion to suppress is GRANTED, and the statements made by Doucette to Agent Fisher may not be offered in evidence by the government.

May 31, 2005                                       \s\ George A. O'Toole, Jr.
DATE                                               DISTRICT JUDGE