UNITED STATES DISTRICT COURT
                     DISTRICT OF MASSACHUSETTS

                                    CRIMINAL NO. 04-10135-GA0

_____
                               )
UNITED STATES OF AMERICA )
                               )
v.                             )
                               )
JILL DOUCETTE                  )
_____)


               DEFENDANT'S SENTENCING MEMORANDUM


I.    INTRODUCTION

     The Defendant, Jill Doucette, respectfully submits this

memorandum for the Court's consideration, and to request the

Court to impose a sentence "sufficient but not greater than

necessary" to achieve the statutory purposes of punishment, as

required by 18 U.S.C. §3553(a) in light of United States v.

Booker, 125 S.Ct. 738 (2005).

     Booker restored the power of the district courts to fashion

a sentence tailored to the individual circumstances of the case

and the defendant.  It requires courts to consider factors other

than the sentencing range prescribed by the United States

Sentencing Guidelines, including: (a) the nature and seriousness

of the offense and the history and characteristics of the

defendant," 18 U.S.C. §3553(a)(1); (b) "the seriousness of the

offense," "respect for the law," and "just punishment for the

offense," 18 U.S.C. §3553(a)(2)(A); (c) to protect the public

from further crimes of the defendant," 18 U.S.C. §3553(a)(2)(C);

and (d) "to provide the defendant with needed educational or vocational care, or other correctional treatment in the most effective manner."  18 U.S.C. §3553(a).  Indeed, the statute requires courts to impose sentences that are "sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection."  18 U.S.C. §3553(a).

II.  BACKGROUND

   A.   HISTORY AND CHARACTERISTICS OF THE DEFENDANT

   Jill Doucette is a twenty-six year old woman who began her life in Gloucester, Massachusetts, in a home environment that was neither stable nor safe.  When she was ten years old, her mother set fire to the family home in the middle of the night while she and her half-brother and grandfather were asleep.  PSR, p. 16, ¶58-59.  Although everyone was able to get out without injury, Ms. Doucette's half-brother left the home to live with his father.  Id.

   Ms. Doucette remained in the home with her mother and she began to experiment with alcohol.  PSR, p. 20, ¶78.  A year later, at age eleven, she began to experiment with marijuana. Id., at ¶79.  When she was in the eighth grade, her mother abruptly moved their residence in order to live with her boyfriend, Mel.  Id., p. 16, ¶60.  They remained there until Ms. Doucette was fourteen years old, at which point her mother again moved the two of them in with her new boyfriend, Bob.  Id., ¶60.

A month after that, Ms. Doucette and her mother moved in with her

aunt.  Id., ¶60.

   With little supervision at home, Ms. Doucette skipped enough

school to attract the attention of the Department of Social

Services, and she was placed in a series of foster homes.  PSR,

p. 17, ¶61.  Eventually, she moved back in with her mother, who

had since married a man named Dean Selig.  Id.

   Ms. Doucette attended at least four different high schools,

while living in the various different homes in which she was

placed.  By her mid-teens, she was using heroin and cocaine.

Id., p. 21, ¶80.  She was not able to complete her high school

education.  PSR, p. 23, ¶91.

   She has two children, ages four and six, who are presently

in the custody of her mother.  PSR, p. 17, ¶67.  For a period of

time, she had regular visits with her children, but she has not

seen them in approximately two years.  PSR, p. 18, ¶70.

   The length of Ms. Doucette's time in custody in this matter

exceeds any time for which she has previously been incarcerated.

This period has created for Ms. Doucette a break with the past.

She has essentially been stopped in her tracks and faced with

what her future will look like if she does not turn away from her

previous patterns of drug addicted living.  She has broken her

associations with her friends from Gloucester, and does not want

to return there when she is released from custody.  PSR, p. 23,

¶90.

B.    NATURE AND CIRCUMSTANCES OF THE OFFENSE

The offenses to which Ms. Doucette has pled guilty are possession with intent to distribute heroin; aiding and abetting same; and conspiracy.  At the Rule 11 hearing, her plea to Count I, alleging conspiracy, was limited on the record such that she has not pled guilty to the quantity of drugs alleged in the conspiracy count of the indictment, but to the conspiracy generally.  Her guilty plea is based upon her participation in four heroin transactions, insofar as she drover her boyfriend, Tom Scola, to the location of the transactions.

At the time of the offenses, Ms. Doucette was living with, and was largely dependent upon, Mr. Scola.  According to the indictment, in which he is also a defendant, Mr. Scola was involved in a number of heroin transactions with an undercover DEA agent.  His supplier for these transactions was a man named Federico Nivar, who was also indicted in this matter.  The DEA reports produced by the government indicate that Mr. Scola used various different drivers to take him to the sites of these transactions, of whom Ms. Doucette was only one.  The DEA reports do not indicate that Ms. Doucette had any dealings with Mr. Nivar, except when he called Mr. Scola and she would answer the phone.  Even on those occasions, she did not have substantive dealings with Mr. Nivar.

Ms. Doucette is no longer in a relationship with Mr. Scola.

III.  SENTENCING GUIDELINES AND REQUEST FOR DOWNWARD DEPARTURE

The plea agreement entered into between Ms. Doucette and the government holds her responsible for 38.4 grams of heroin.  That quantity is the total amount of heroin that was involved in the transactions that form the basis for the non-conspiracy counts of the indictment to which Ms. Doucette has pled guilty: Counts 7, 12, 13, and 14.  PSR, p. 7, ¶32.  The largest quantity of heroin involved in any of those four transactions was 9.7 grams. (Count 7, February 10, 2004).  Based upon the 38.4 grams attributed to the defendant by the government, and acknowledged by the defendant, the plea agreement assigns a base offense level of 18. Plea Agreement, p. 2.

The PSR attributes an additional 13.7 grams of heroin to Ms. Doucette, and assigns a base offense level of 20.  The 13.7 grams of heroin referenced in the PSR (p. 8, ¶21) is the quantity of heroin that the government alleges was found in the police cruiser used to transport Mr. Nivar after his arrest, apparently stuffed into the seat behind Mr. Nivar.  There is nothing to connect this quantity of heroin with Ms. Doucette.  In addition, the quantity is higher than any quantity involved in any of the four counts of the indictment to which Ms. Doucette has pled. There is no evidence or indication that this quantity was

reasonably foreseeable to Ms. Doucette, and thus it should not be added to the amounts for which she is held responsible. The base offense level should be Level 18.

The PSR correctly grants Ms. Doucette a two-level reduction for being a minor participant in the offense pursuant to U.S.S.G. §3B1.2, giving her an adjusted offense level of 15. The government has agreed to recommend a three-point reduction for acceptance of responsibility. This would bring her total offense level to 13.

The PSR also places Ms. Doucette in Criminal History Category VI, based on a point total of seven. Pursuant to U.S.S.G. §4A1.3(b)(1), the defendant respectfully requests this Court to grant her a one-category downward departure because her current category substantially overstates her criminal history. The granting of this one-category downward departure would place Ms. Doucette in Criminal History Category III. The defendant stating the following grounds in support of her request:

1.   Seven criminal history points are counted against Ms. Doucette, placing her in Category VI by one point. Of the seven points, one is point is the result of a May 7, 1999 admission to sufficient facts on a charge of Being Present Where Heroin is Kept, G.L. c. 94C §35. PSR, p. 9, ¶42. The matter was disposed of by means of a continuance without a finding after Ms. Doucette's admission. The docket entries made on the date of

disposition indicate that no judicial finding of guilt was made,
and no sentence, probationary or otherwise, was imposed.[1]  The
charges were dismissed on October 19, 2000.

2.   While the Guidelines call for the addition of one
criminal history point given the procedural history of the case
under §4A1.1(c)and §4A1.2(f), the facts and circumstances of the
case as described in the PSR raise a question as to whether Ms.
Doucette's actions in that matter should push her into a higher
criminal history category in this case.

3.   As described in the PSR, the charges were brought after
Ms. Doucette called Gloucester police for help when her then-
boyfriend, Phillip Robinson, overdosed on heroin.  While
paramedics treated Mr. Robinson, Ms. Doucette was questioned by
police and admitted that she was present in the bedroom when Mr.
Robinson snorted the heroin.  She left for a moment and when she
returned he was having trouble breathing.  She helped police find
the bag of heroin.

4.   Ms. Doucette was nineteen years old at the time of the
offense.

If this Court grants Ms. Doucette's request for a one-
category downward departure, she would be in Criminal History
Category III.  In that category, with a total offense level of
13, the guidelines sentencing range would be 18-24 months.
Alternatively, with a total offense level of 15, that assigned to

---

[1] Later docket entries do make reference to probation-related matters.

7

Ms. Doucette in the PSR, the guidelines sentencing range would be 24-30 months.


IV.    POST-BOOKER SENTENCING CONSIDERATIONS

After Booker, the Guidelines are not the sole basis on which sentences should be imposed, nor are they mandatory.  Rather, they are advisory, and they must be considered together with the other factors set forth in the sentencing statute.  If a sentence within the range prescribed by the Guidelines is higher than necessary to accomplish the goals enumerated in 18 U.S.C. §3553(a)(2), then a sentence below the Guidelines range must be imposed.  18 U.S.C. §3553(a).

By the date of sentencing, Ms. Doucette will have been in custody in this matter now for over twenty months.   PSR, second page after cover (unnumbered), Custodial Status (first paragraph).  This is the longest period of incarceration she has ever experienced.  It has removed Ms. Doucette from her prior associations, and from society in general for close to two years. It has made her decide to dissociate herself from the community from which she came, and her plan for after release is to live far away from Gloucester and the people she knows from that community.

Depending upon how the Court resolves the issues of the

appropriate drug weight and therefore base offense level, and the requested downward departure, the time Ms. Doucette has already served as of the date of sentencing, with good time credits, will either exceed the guidelines range, nearly equal it, or be short by six months at most.  Nothing more will be accomplished by imposing a sentence that causes Ms. Doucette to serve further time for this offense.  In short, the goals of 18 U.S.C. §3553(a) have been accomplished by the time already served as well as any sentence of incarceration could.

WHEREFORE, the defendant respectfully requests this Honorable Court to impose a sentence of time served.

Respectfully submitted,

JILL DOUCETTE
By her Attorney,


 /s/Leslie Feldman-Rumpler
Leslie Feldman-Rumpler, Esq.
BBO # 555792
101 Tremont Street, Ste. 708
Boston, MA 02108
(617) 728-9944

## CERTIFICATE OF SERVICE

I, Leslie Feldman-Rumpler, hereby certify that I have caused a copy of the within document to be transmitted electronically to AUSA David Tobin this day.

 3/10/2006          /s/Leslie Feldman-Rumpler
Date                Leslie Feldman-Rumpler, Esq.